WILLIAMS, Respondent, v. WILLIAMS, Appellant.

*No. 263.   Argued May 4, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 208.)

454

For the appellant there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondent there was a brief and oral argument by *Dennis C. Bailey* of Spooner.

HANLEY, J.  Two issues are presented on appeal:

(1) Was the finding of cruel and inhuman treatment sustained by the evidence; and

(2) Is the doctrine of recrimination applicable in this case?

*Sufficiency of the evidence.*

In this case the trial court found:

"8. That the plaintiff has met the required burden of proof in establishing that the defendant has treated him in a cruel and inhuman manner, which treatment materially affected the plaintiff's health."

The only witnesses upon the trial were the parties themselves. The plaintiff testified to the acts found by the trial court to be cruel and inhuman. The defendant denied or justified the acts complained of.

The plaintiff testified that on numerous occasions his wife would go to his commanding officer with various complaints about him. He was then called in by his commanding officer and admonished to resolve his marital difficulties. He stated that his wife told him on one occasion that she would "before she turned me loose," see to it that "I was busted as a private and kicked out of the Army." He also related that his wife was once stopped by United States authorities while trying to enter the East Zone in Berlin. He was called in and warned that this jeopardized his security clearance because he had sworn that neither he nor his wife had any relatives in Communist East Germany. His wife had told border guards that she wanted to enter the East Zone to attend the funeral of a relative.

The plaintiff further testified that his wife would constantly "nag" him about where he was going and demand to know when he would be home. He explained that the nature of his work did not involve regular hours and he could not predict his arrivals and departures. When he arrived home late his wife would "holler and raise cain" and often refused to prepare his meals. He stated that his wife's behavior toward him at home caused him to become very nervous, to smoke excessively and to develop gastritis. The defendant said he underwent involuntary bankruptcy in December, 1964, as a result of expenditures made by or on behalf of his wife.

On cross-examination, the defendant acknowledged that he had written to his wife in October, 1964, while she was visiting in Germany, stating:

". . . one think [sic] more is that I do not love you any more. I have been going and seen [sic] another girl since August of 1963. . . ."

Only a few weeks after receiving this letter, the defendant returned from Germany to join her husband in Georgia. They apparently reconciled at this time because from January of 1965 until May of 1968, they lived together as husband and wife.

The defendant's testimony was that she and her husband never fought or argued. He never mistreated her physically and, in fact, ". . . he spoiled me, I have to admit that. He really did spoil me. . . . Everytime I said, 'I like this, this is nice,' the next day it was, it was delivered." The defendant stated that she still loved her husband and thought the marriage could be successful and wanted to try and make it work. She categorically denied that she ever "nagged" her husband, refused to fix his meals or threatened to have him reduced in rank or discharged from the service.

With reference to contacting her husband's commanding officer, she could only recall two occasions. Once in 1964, she heard that her husband was about to be sent back to Georgia for Officer Candidate School. He had not told her of this. She went to his commanding officer to ask if it was true. On the second occasion, in 1965, she went to the commanding officer because she was out of money and her husband was not giving her any.

Regarding the bankruptcy, the appellant stated that "From what I heard" her husband gambled excessively, and she suspected it was true because he frequently borrowed money from her and "[h]e needed it for something."

In *Gauer v. Gauer* (1967), 34 Wis. 2d 451, 454, 455, 149 N. W. 2d 533, this court stated that to be cruel and inhuman, the conduct in question must:

(1) Be unreasonable and unwarranted;

(2) Render the parties incapable of performing their marital duties; and

(3) Have a detrimental effect on the mental or physical health of the offended spouse.

In determining whether the alleged conduct has resulted in the conditions listed above, the court must view the totality of the conduct and not treat each instance of misconduct as an isolated act.

A review of the testimony as to cruel and inhuman treatment fails to disclose that the defendant's conduct was unreasonable or unwarranted. It was not unreasonable for the wife to complain to the commanding officer when her husband did not furnish her money or when he tried to go to the United States and leave her in Germany. Going to a funeral of a near relative in the Eastern Zone of Germany, while inadvisable, is certainly not cruel and inhuman treatment. Regarding the plaintiff's bankruptcy, there is no proof that defendant's extravagance was the cause of such action.

The inability of the parties to arrange regular meal schedules and the resulting arguments are merely evidence of incompatibility, which is not a ground for divorce.

In the instant case there is no demonstration of any grave effect upon the health of the plaintiff, other than alleged "nervousness."

It is apparent that the evidence produced at trial does not satisfy the test established by this court in order to constitute cruel and inhuman conduct.

We think the letter written by the plaintiff to his wife in October, 1964, while she was visiting in Germany, explains plaintiff's real reason for wanting a divorce. We conclude that the record herein is not one that will support a judgment for divorce in favor of the plaintiff.

The remaining issue of recrimination is not reached because of our ruling that the record will not support a judgment for divorce.

*By the Court.*—Judgment reversed and cause remanded with directions to vacate the judgment and dismiss the plaintiff's complaint.