IN RE the MARRIAGE OF Garry A. HOLLISTER, Petitioner-Respondent,

v.

Lisa L. HOLLISTER, Respondent-Appellant.

Court of Appeals

*No. 92-1649-FT. Submitted on briefs November 12, 1992.—Decided December 22, 1992.*

(Also reported in — N.W.2d —).

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Don Paul Novitzke* of *Novitzke & Gust* of Amery.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Molly E. Galewyrick* of *Guy T. Ludvigson, S.C.* of Osceola.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Lisa Hollister appeals a judgment awarding her former husband, Garry Hollister, custody of their two minor children.[1] Lisa claims that the circuit

---

[1] This is an expedited appeal under Rule 809.17, Stats.

court did not take into consideration all the statutory criteria set forth in sec. 767.24(5), Stats., or the testimony and opinion of a psychologist, Dr. John Hamann, but rather decided custody only on the basis of the anger that Lisa felt toward Garry. She also claims that the trial court erred by not allowing cross-examination of the guardian ad litem. We affirm the circuit court's decision.

Garry and Lisa Hollister were married and have two minor sons, Lance and Alex. In July 1991, Garry moved out of the home he shared with Lisa and their two sons, Lance and Alex. A month later, he petitioned for divorce. Garry became involved in a relationship with another woman and moved into her home. As a result, Lisa was very angry at Garry and expressed this anger consistently. Both Lisa and Garry desired custody of Lance and Alex.

Pursuant to sec. 767.045, Stats., the court appointed a guardian ad litem in the custody and physical placement dispute.[2] During the time between his appointment and the final hearing, the guardian ad litem met in person and via telephone with several people who had insight regarding Lance and Alex and the parenting capabilities of Lisa and Garry. He also made announced visits to the homes of both Lisa and Garry and observed the children with each parent. During the investigation, the guardian ad litem also had access to the children's medical and counseling records.

The guardian ad litem submitted a preliminary report and recommendation to the trial court and to attorneys for both parties. This report and recommendation stated that the children's best interests would be

---

[2] It should be noted that the term "visitation" has been replaced with the term "physical placement" when dealing with the relationship of the parents and their children. Chapter 767, Stats.

served if custody was awarded to Garry. The guardian ad litem further recommended that Lisa have frequent and liberal physical placement.

At the final hearing, the guardian ad litem was present for the entire proceeding, cross-examined witnesses and participated in the hearing as an advocate for the children's best interests. Both Garry and Lisa testified extensively as did numerous others, including Dr. John Hamann, a psychologist who opined that custody of the children ought to be with Lisa. The guardian ad litem also gave an oral recommendation after each party's final argument. Consistent with his preliminary report and recommendation, the guardian ad litem recommended that Garry be awarded custody and Lisa be allowed liberal physical placement rights. The guardian ad litem did not testify and did not present evidence that was not otherwise before the court. The circuit court ruled that it was in the children's best interests that Garry be given sole custody and awarded Lisa physical placement rights on every other weekend.

A custody determination depends on firsthand observation and experience with the persons involved and is therefore committed to the sound discretion of the circuit court. *Gould v. Gould*, 116 Wis. 2d 493, 497, 342 N.W.2d 426, 429 (1984). Thus, a custody determination will not be upset unless the findings of fact are clearly erroneous or the decision represents a clear abuse of discretion. *Id.* at 498, 342 N.W.2d at 429.

Section 767.24, Stats., sets forth the factors to be considered in custody and physical placement determinations. These factors include the wishes of the child's parents, the wishes of the child and the interaction and interrelationship of the child with his or her parents,

siblings and any other person who may significantly affect the child's best interests. The numerous factors also include whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party. Section 767.24(5)(g), Stats.

Lisa's first two arguments contend that the trial court did not consider the appropriate factors in making its determination. She argues that in rendering its opinion, the court did not consider the proper statutory factors or the opinion of Dr. Hamann, the psychologist. The trial court's oral decision refutes this contention. The court considered the proper statutory criteria, particularly noting that Lisa's anger toward Garry and past unilateral decisions made to deprive Garry of visiting with his children made it likely that, if given custody, she would unreasonably interfere with the children's continuing relationship with Garry. The trial court did not fail to consider the testimony of Dr. Hamann. In fact, it referred to Dr. Hamann's findings in its oral decision. The record demonstrates that the trial court exercised its discretion reasonably in making its decision.

Lisa also contends that the trial court erred as a matter of law by not allowing her to cross-examine the guardian ad litem. Section 767.045, Stats., mandates the appointment of a guardian ad litem in divorce cases where custody is disputed. It states that the guardian ad litem shall be an attorney admitted to practice in Wisconsin and shall "be an advocate for the best interests of a minor child as to legal custody, physical placement and support." Section 767.045(4), Stats. The statute further states "[t]he guardian ad litem shall function independently, in the same manner as an attorney for a party to the action." *Id.* The Judicial Council Notes to this section clarify that subsec. (4):

specifies that the guardian ad litem shall function in the same manner as the lawyer for a party. Among other things, this means that the guardian ad litem *communicates with the court and other lawyers in the same manner as a lawyer for a party,* presents information on relevant issues through the presentation of evidence or in other appropriate ways and generally functions as the lawyer for a party.

Judicial Council Notes, 1989, Wis. Stat. Ann. sec. 767.045(4) (West Supp. 1992). (Emphasis added.)

In general, the role of the guardian ad litem is not well-defined. Some jurisdictions have stated that the guardian ad litem concurrently fulfills the three roles of investigator, officer of the court and advocate. *See* Edward Sokolnicki, *The Attorney as Guardian Ad Litem for a Child in Connecticut,* 5 CONN. PROB. L.J. 237 (1991). Other jurisdictions have held guardians ad litem in a custody hearing to be proper witnesses, subject to cross-examination. *See, e.g., Beran v. Beran,* 450 N.W.2d 688, 691 (Neb. 1990); *Shainwald v. Shainwald,* 395 S.E.2d 441, 443-44 (S.C. App. 1990).

In Wisconsin, however, the plain language of sec. 767.045, Stats., shows that the guardian ad litem is first and foremost an advocate for the child's best interests. *Wiederholt v. Fischer,* 169 Wis. 2d 524, 536, 485 N.W.2d 442, 446 (Ct. App. 1992). Additionally, SCR 20:3.7 states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Consequently, if a guardian ad litem were to be called as a witness, SCR 20:3.7 would mandate that the guardian resign as advocate for the best interests of the child. *S.S. v. D.M.,* 597 A.2d 870, 877 (D.C. App. 1991), applied this same rule codified in the D.C. Rules on Professional Responsibility to a show cause hearing of an adoption

petition. *S.S.* notes that the "advocate-witness" conflict may prejudice the client when the attorney's testimony is impeached on cross-examination or may prejudice the opposing party when the attorney's testimony is given undue weight by the fact-finder. *Id.*

We conclude under the plain language of the statute that a guardian ad litem appointed under sec. 767.045, Stats., may not be called as a witness in a custody proceeding, and therefore may not be cross-examined. Section 767.045 does not contemplate two guardians ad litem: one who investigates, prepares a report, is called to testify and then resigns as an advocate, and then another who becomes solely an advocate for the best interests of the children. The attorney acting as guardian ad litem for the child's best interests is to be treated as any other attorney acting as an advocate for a party in the proceeding. Commentators have also adopted this view of the guardian ad litem's role. *See* Richard J. Podell, *The Role of The Guardian Ad Litem,* 25 TRIAL 31, 34 (April 1991).

In Wisconsin, many trial courts have mistakenly viewed the guardian ad litem as having a fact-finding mission. This may have resulted from language stating that the guardian ad litem acts as a representative appointed to counsel and consult with the trial judge concerning the custody issue, *Allen v. Allen,* 78 Wis. 2d 263, 268, 254 N.W.2d 244, 247 (1977), and is an adjunct to the court. *de Montigny v. de Montigny,* 70 Wis. 2d 131, 141, 233 N.W.2d 463, 468 (1975).

The *Allen* and *de Montigny* decisions attempted to emphasize that the guardian ad litem is to act as an advocate for the best interests of the children. However, they may have left the impression that the guardian ad litem is more than simply an advocate and has other

419

powers that advocates do not possess, particularly the ability to present a report and represent facts to the court. Although *Allen* specified that the guardian ad litem report should not contain new factual information that is not a part of the record and not subject to cross-examination, we fear that often guardian ad litem reports do contain factual information that is not otherwise before the court. The legislature clarified the role of the guardian ad litem in 1989 when it replaced the statute upon which *Allen* and *de Montigny* were based with the present sec. 767.045, Stats. This new section states clearly that the guardian ad litem is to function as an attorney. In fact, the Judicial Council Notes to the section state that the guardian ad litem should communicate with the court in the same manner as a lawyer for a party would and present information through the presentation of evidence. Judicial Council Notes, 1989, Wis. Stat. Ann. sec. 767.045(4) (West Supp. 1992). This clearly precludes the guardian ad litem from counseling or consulting with the judge in a manner different from an attorney for any other party.

Lisa argues that she was not given the opportunity to question the opinions and assertions of the guardian ad litem. However, she received the guardian's preliminary recommendation nearly two months before the final hearing. She also contends that the guardian's preliminary recommendation and final hearing oral recommendation constitute testimony, which she should be able to rebut through cross-examination. However, she did not object at trial that the guardian ad litem's report contained inappropriate information. Because sec. 767.045, Stats., states that the guardian ad litem shall function in the same manner as an attorney, we view the guardian's preliminary report submitted in this case as

420

similar to an attorney's brief and the oral recommendation as the guardian's final argument. Here, Lisa had ample opportunity to dispute the assertions of the guardian ad litem just as she had ample opportunity to dispute the assertions of Garry's counsel. We therefore conclude that the trial court correctly refused to allow the guardian ad litem to be cross-examined.

*By the Court.*—Judgment affirmed.